**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**MIDWEST FEEDERS, INC.**                                    **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO: 5:14-cv-78-DCB-MTP**

**THE BANK OF FRANKLIN**                                   **DEFENDANT**

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

This matter is before the Court on Defendant's, The Bank of Franklin, Motion to Dismiss **[docket entry no. 11]**. Having reviewed the motion and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

### I. Factual And Procedural Background

In 2006, Robert Rawls entered into a financing contract with Plaintiff Midwest Feeders, Inc. ("Midwest Feeders"). Rawls conducted business individually and through two corporate entities: Robert Rawls Livestock and Rawls Trucking, LLC. Midwest Feeders deposited money into an account at Alva State Bank & Trust of Alva, Oklahoma ("Alva"). Rawls was to use the Alva account to purchase livestock, and in exchange Midwest Feeders was granted a security interest in the livestock. And as Midwest Feeders asserts in its complaint, "[a]t some point, Rawls decided to steal from Midwest [Feeders]." Compl. ¶ 14, ECF No. 1. Rawls made out checks to

1

fictitious payees from the Alva account and endorsed them and stamped them as payable to his livestock company for deposit only. Rawls then deposited the checks into an account at The Bank of Franklin ("Bank of Franklin"), which turned them over to Alva for payment. Between October 2013 and March 2014, Rawls fraudulently endorsed and cashed 891 checks for over $85 million through a "fictitious payee" scheme. In litigation in the District Court of Finney County, Kansas, Rawls confessed to the fraudulent activity, but invoked his Fifth Amendment rights against self-incrimination in response to certain deposition questions.

Midwest Feeders sued Bank of Franklin on September 5, 2014, alleging its involvement in Rawls's scheme. In its complaint, Midwest Feeders lists six claims for relief: (1) conversion of instruments under Mississippi Code Annotated ("MCA") Section 75-3-420, (2) failure to exercise ordinary care under MCA 75-3-404(d), (3) common law conversion of funds, (4) negligence, (5) negligent hiring and supervision, and (6) civil conspiracy. Compl. 12-20. On October 9, 2014, Bank of Franklin moved to dismiss all of these claims for failure to state a claim. The Court having ruled on two intervening motions, see Order, ECF No. 26, the Motion to Dismiss is now ripe.[1]

---

[1] Having considered the arguments made in footnote one of Bank of Franklin's rebuttal memorandum and the surreply filed by Midwest Feeders, the Court finds the arguments are without merit. First, even if Midwest Feeders' brief was filed out of time, the Court will consider it because "the arguments asserted therein

## II. Analysis

Bank of Franklin has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). The plaintiff must plead sufficient facts so that the court may reasonably infer the defendant's liability for the alleged misconduct. Id. "[A] plaintiff armed with nothing more than conclusions cannot unlock the doors of discovery." Doe v. Robertson, 751 F.3d 383, 393 (5th Cir. 2014) (internal quotations omitted). Because this Court sits in diversity in this case, it must apply the substantive law of Mississippi. See Krieser v. Hobbs, 166 F.3d 736, 739 (5th Cir. 1999).

### A. Conversion Claims

1. Under the UCC

In Midwest Feeders' first claim, it alleges conversion under

---

are helpful to a resolution of [the] motion." Merit Elec., Inc. v. Motiva Enters., LLC, No. 10501DM2, 2011 WL 900306, at *1 n.1 (M.D. La. Mar. 14, 2011) (citing Nelson v. Star Enter., 220 F.3d 587 (5th Cir. 2000) (holding that district courts have broad discretion to consider untimely opposition to motions)). Second, the Court finds that no relief is appropriate for Bank of Franklin's suggested violation of Federal Rule of Civil Procedure 11. A motion for sanctions must first be served on the opposing party, and the alleged violation must remain uncorrected for twenty-one days before the motion is filed with the court. Fed. R. Civ. P. 11(c)(2). There is no evidence that this procedure was followed.

the Uniform Commercial Code ("UCC") as codified in Mississippi. Section 75-3-420 provides that an instrument can be

> converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (I) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

Miss. Code Ann. § 75-3-420 (1993). Bank of Franklin argues that Midwest Feeders has failed to properly plead this claim because "the instrument was properly negotiated and payable to Rawls." Mem. Supp. 9, ECF No. 12. Midwest Feeders argues this is not true because "the payee did not exist to provide any valid endorsement to Rawls." Mem. Opp. 13, ECF No. 14. Section 75-3-110 provides that "[t]he person to whom an instrument is initially payable is determined by the intent of the person . . . signing as . . . the issuer of the instrument." Miss. Code Ann. § 75-3-110(a) (1993). Bank of Franklin argues that because Rawls always intended to be the payee, the instrument was properly negotiated. But the comments to Section 75-3-110 make clear that in "fictitious payee" situations, courts apply the rules laid out in Section 75-3-404(b). Section 75-3-404(b) provides that "[a]n indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for

4

collection." Miss. Code Ann. § 75-3-404(b)(2) (1993). Midwest Feeders argues that it has pled that Rawls did not indorse the checks in good faith, rendering the negotiation of the instrument in his favor improper.

Bank of Franklin next argues that the claim fails because Midwest Feeders "is not the proper party to assert a claim for conversion." Reply 18, ECF No. 20. Bank of Franklin cites to a case from the Seventh Circuit holding that a party with only an equitable interest in a check could not assert a claim for conversion under the UCC in Illinois. See Am. Nat'l Ins. Co. v. Citibank, N.A., 543 F.3d 907, 909-10 (7th Cir. 2008). The Seventh Circuit held that "an interest in the funds backing the checks" was not the same as "an interest in the checks themselves." Id., at 910. And that allowing a claim to go forward under those circumstances would impose an untenable burden on banks:

> Instead of being able to look at the payee line and [sic] to verify that the person presenting the check was indeed entitled to do so, banks . . . would need to conduct a full-blown investigation every time to make sure that a party with an equitable interest in the check was not lurking in the background. Such a system would bring commercial transactions to a grinding halt.

Id., at 909-10. The UCC provision at issue in American National is identical to Mississippi's section 75-3-420. See Polles v. F.D.I.C., 749 F. Supp. 136, 139 n.9 (N.D. Miss. 1990) (noting that the Mississippi legislature codified a UCC section verbatim). The elements of a claim for conversion of a negotiable instrument

against a depositary bank in Mississippi are identical as those for a claim against a financial institution in Illinois. A plaintiff "in choosing to sue in conversion [under the UCC] must . . . show[]: (1) title to, possession of or right to possession of a check, (2) the payee's forged, unauthorized or missing endorsement on the check, and (3) the depositary or collecting bank's unauthorized payment of the check."[2] <u>Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss.</u>, 790 So. 2d 862, 871 (Miss. 2001). Because Midwest Feeders can show nothing more than an interest in the funds behind the forged checks, it cannot maintain an action in conversion against Bank of Franklin. Therefore, the motion will be granted as to this claim.

2. Under the Common Law

Midwest Feeders in its third claim alternatively pleads conversion under the common law "[t]o the extent Defendant asserts that Miss. Code § 75-3-420 is inapplicable." Compl. ¶ 53. Bank of Franklin argues: (1) that Midwest Feeders has failed to plead a claim for common law conversion and (2) that Mississippi's UCC displaces this claim for relief. Mem. Supp. 11.

First, Midwest Feeders has properly pled the elements of a claim for common law conversion. The Mississippi Supreme Court

---

[2] In Illinois, "a plaintiff must prove (1) her ownership of, interest in or right to possession of the check; (2) the fact that her apparent endorsement of the check was forged or unauthorized; and (3) the fact that the defendant bank was not authorized to cash the check." <u>Am. Nat'l Ins.</u>, 543 F.3d at 909.

stated that "[t]he elements of conversion are established in Mississippi." Cmty. Bank, Ellisville, Miss. V. Courtney, 884 So. 2d 767, 773 (Miss. 2004). Common law conversion requires "a wrongful possession" with "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." Id., at 773-74. The intent need not be that of a wrongdoer, id., at 774, meaning that "one may be liable for the tort of conversion even if acting under a good-faith mistake of fact or law," In re Blake, 516 B.R. 352, 358 (Bankr. N.D. Miss. 2014).

Midwest Feeders alleges that

> Bank of Franklin converted funds because it obtained payment of the Fraudulent Purchase Checks over fraudulent endorsements by a fictitious payee, when Rawls had no right to enforce the negotiable instrument. . . Bank of Franklin acted in bad faith by its repeated pattern of accepting for deposit the Fraudulent Checks without inquiry and by refusing to repay the amounts to Midwest [Feeders] represented by such instruments.

Compl. ¶¶ 56-57. Bank of Franklin argues that Midwest Feeders did not have any interest in the funds after they were deposited into the Alva account. Reply p. 23. Midwest Feeders, however, alleges that it provided secured financing to Rawls who was contractually permitted only to use the funds to purchase livestock in which Midwest Feeders would then have a security interest. Midwest Feeders responds that it did allege a security interest in the funds in the Alva account because of its obligation to make deposits in the account. Mem. Opp. p. 18. At this stage of litigation, it is sufficient that Midwest Feeders plausibly alleges

an interest in the funds.

Second, however, the UCC provisions relating to conversion of negotiable instruments have supplanted fully the common law cause of action. "Once the checks were presented to the bank for deposit, the 'rights and responsibilities of the parties are determined by reference to the Mississippi [UCC].'" Hancock Bank v. Ensenat, 819 So.2d 3, 9 (Miss. Ct. App. 2001) (quoting White v. Hancock Bank, 477 So. 2d 265, 271 (Miss. 1985)). In Ensenat, the plaintiff sought to avoid application of the UCC by not pleading a claim for conversion; however, the court found that the UCC "displace[d] [the plaintiff's] common law claims insofar as [the] common law claims relate to the conversion of the instruments." Berhow v. The Peoples Bank, 423 F. Supp. 2d 562, 567-68 (S.D. Miss. 2006) (discussing Ensenat). Because Midwest Feeders' claim clearly relates to conversion of instruments, it is governed by the UCC. Therefore, the motion will be granted as to this claim.

B. Negligence Claims

1. Failure to Exercise Ordinary Care

In Midwest Feeders' second claim, it alleges a failure to exercise ordinary care as defined by the UCC. Section 75-3-404(d) provides:

> if a person paying the instrument [subject to this statute] or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to

8

> exercise ordinary care to the extent the failure to
> exercise ordinary care contributed to the loss.

Miss. Code Ann. § 75-3-404(d) (1993). The Code further defines ordinary care:

> "Ordinary care" in the case of a person engaged in
> business means observance of reasonable commercial
> standards, prevailing in the area in which the person is
> located, with respect to the business in which the person
> is engaged. In the case of a bank that takes an
> instrument for processing for collection or payment by
> automated means, reasonable commercial standards do not
> require the bank to examine the instrument if the failure
> to examine does not violate the bank's prescribed
> procedures and the bank's procedures do not vary
> unreasonably from general banking usage not disapproved
> by [the UCC].

Miss. Code Ann. § 75-3-103(a)(9) (2010). Bank of Franklin argues that it did not "violate[] the narrowly subscribed duty of 'ordinary care'" and that it did not "cause[] or 'substantially contribute[] to' [Midwest Feeders'] claimed loss." Mem. Supp. 14, ECF No. 12.

Despite the allegations of a failure of internal reporting procedures and those required by the Bank Secrecy Act and Patriot Act, Bank of Franklin took facially valid checks from Rawls. Midwest Feeders alleged that the failure to examine a facially valid check violated the duty of ordinary care. Determining whether this allegation demonstrates that Bank of Franklin bucked "reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged," see §75-3-103(a)(9), requires further factual

development; therefore, the Court will deny the motion as to this claim.

### 2. Pure Negligence and Negligent Hiring and Supervision

In its fourth and fifth claims for relief, Midwest Feeders argues that Bank of Franklin is liable under theories of negligence: pure negligence and negligent hiring and supervision. Bank of Franklin primarily argues that Midwest Feeders' negligence-based claims must fail for the same reason: a bank does not owe a duty of care to a non-customer.[3] Mem. Supp. 5-8, ECF No. 12. Both parties assert that whether a bank owes a duty in negligence to a non-customer is an issue never decided by the Supreme Court of Mississippi, and the Court can find no authority otherwise. "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992). This determination is known as an Erie guess. See generally, Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "In making an Erie guess, [courts] defer to intermediate state appellate court decisions,

---

[3] In Mississippi, "the traditional elements of negligence [are] duty or standard of care, breach of that duty or standard, proximate causation, and damages or injury." Lyle v. Mladinich, 584 So. 2d 397, 398-99 (Miss. 1991). "In order to make a claim for negligent supervision, [the plaintiff] must establish the same elements as a regular negligence claim. . . ." Miller v. Union Planters Bank, N.A., No. 2:05cv2144, 2006 WL 3391095, at *6 (S.D. Miss. Nov. 22, 2006) (citing Warren v. Glascoe, 852 So. 2d 634, 639 (Miss. 2003)).

unless convinced by other persuasive data that the highest court of the state would decide otherwise, and [courts] may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns." Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP, 542 F.3d 475, 483 (5th Cir. 2008) (internal citations and quotation marks omitted). The Court can find no relevant decisions of the Mississippi Court of Appeals, and so it looks to other persuasive authority.

"The almost-universal law in this county is that banks owe a duty of care only to their own customers." SFS Check, LLC v. First Bank of Del., 774 F.3d 351, 357 (6th Cir. 2014); accord Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) ("As a general matter, banks do not owe non-customers a duty to protect them from the intentional torts of their customers." (internal quotation marks omitted)). The Supreme Court of Louisiana explained the reasoning behind the absence of a duty most eloquently:

> The banking industry handles a tremendous volume of transactions which involve small, as well as large, sums of money. To meet the requirements and complexities of our present financial system, the negotiable instrument has emerged as the universal method of insuring the certainty of commercial transactions. . . [W]hen a bank receives a check for deposit which, in all aspects, is valid on its face . . . , that bank has the right to treat that check as it would any other deposit. To require the bank to investigate the underlying transaction which led to the issuance of the instrument or to permit a third person to challenge the depositor's ownership . . . would result in an unreasonable burden upon, and disruption of, regular and normal banking

transactions.

Shreveport Prod. Credit Ass'n v. Bank of Commerce, 405 So.2d 842,
845-46 (La. 1981) (footnote omitted); see also Guidry v. Bank of
LaPlace, 954 F.2d 278, 286-87 (5th Cir. 1992) ("The Louisiana
Supreme Court has found as a matter of law that under normal
circumstances a bank owes no duty to those who are not its
customers respecting investigation or disclosure concerning its
customers." (citing Shreveport Prod. Credit Ass'n, 405 So.2d at
845-46)).

While the Court acknowledges the above persuasive authorities,
the Court finds that it is premature to make just such an Erie
guess. The Court is guided by the circumspection of previous
decisions in this jurisdiction when faced with similar
circumstances:

> This Court acknowledges that authority cited by
> Defendants in which other courts have held, in situations
> where an Erie guess was made, that the particular state
> law under consideration would likewise not recognize a
> private right of action. However, . . . the analysis in
> [the persuasive authority] was made at the summary
> judgment stage.
>
> This Court is not at the point of discussing Mississippi
> law on the potential theories of recovery and related
> issues, and is not foreclosing consideration of a
> motion(s) for summary judgment following a full
> development of the record. At th[e motion to dismiss]
> stage, however, it cannot be stated that Plaintiffs'
> cause of action fails under [Rule] 12(b)(6).

Sutton v. Citimortgage, Inc., No. 1:05cv706, 2006 WL 5287263, at
*2-3 (S.D. Miss. Nov. 14, 2006) (internal citations omitted); see

also, Duhon v. Trustmark Bank, No. 1:06cv718, 2007 WL 627889, at *4 (S.D. Miss. Feb. 25, 2007) (granting motion to remand because "[a]pplying an *Erie* guess to Mississippi substantive law at this stage puts the cart before the horse and is inconsistent with the notion that all ambiguities in the controlling state law are resolved in favor of the plaintiff"). Midwest Feeders' claims for negligence and negligent hiring and supervision may turn on a question of law, but the Court believes that question must wait to be answered.

Next, the Court turns to the remaining elements of negligence. "[T]here appears to be scant evidence to support the viability of these claims; however, the Court will deny the motion to dismiss for failure to state a claim at this stage in anticipation of careful review after discovery and at the summary judgment stage." Smith v. Antler Insanity, LLC, 58 F. Supp. 3d 716, 724 (S.D. Miss. 2014). As to breach, Midwest Feeders alleges that Bank of Franklin failed in its duty of care to investigate the checks and discover Rawls' fraud. As to causation, Midwest Feeders alleges that but for Bank of Franklin's negligent acceptance of the checks, it would not have been damaged. As to damages, Midwest Feeders alleges it lost roughly $85 million dollars through Rawls' fraudulent scheme, aided by Bank of Franklin's negligence. These allegations are sufficient to create a factual issue on the claim for ordinary negligence.

As for negligent hiring, "a plaintiff must prove that (i) the

13

employer had actual notice of the employee's incompetence or unfitness; or (ii) the employer's situation was such as to cast upon the employer the duty of inquiring and the employer could have discovered the employee's incompetence or unfitness by proper diligence." Keen v. Miller Envtl. Grp, Inc., 702 F.3d 239, 245 (5th Cir. 2012) (citing Doe ex rel. Brown v. Pontotoc Cnty. Sch. Dist., 957 So. 2d 410, 416-17 (Miss. Ct. App. 2007)). As for negligent supervision, the Mississippi Court of Appeals has recognized that an employer must have actual or constructive knowledge of an employee's tendency for improper behavior for liability to attach. See Holmes v. Campbell Props., Inc., 47 So. 3d 721, 729 (Miss. Ct. App. 2010).

Based on the above analysis, the Court will deny the motion to dismiss as to these claims.

## C. Civil Conspiracy

In its sixth and final claim, Midwest Feeders alleges a civil conspiracy between Rawls and Bank of Franklin. Bank of Franklin argues that Midwest Feeders has not properly pled this claim.

To establish a civil conspiracy in Mississippi, a plaintiff must plead (1) an agreement between two or more persons, (2) an unlawful purpose, (3) an overt act in furtherance of the conspiracy, and (4) resulting damages to the plaintiff. Bradley v. Kelley Bros. Contractors, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). "A person can conspire with a corporate entity." Id., at 339

14

n.4. "These elements are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that 'an agreement is the essence of a criminal conspiracy,' while 'damages are the essence of a civil conspiracy.'" Id., at 339 (quoting 15A C.J.S. Conspiracy § 7 (2012)). Further, "a civil conspiracy claim cannot stand alone, but must be based on an underlying tort." Aiken v. Rimkus Consulting Grp., Inc., 333 F. App'x 806, 812 (5th Cir. 2008) (per curiam) (citing Wells v. Shelter Gen. Ins. Co., 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (applying Mississippi law; collecting cases)).

Midwest Feeders alleges in its complaint (1) that "Rawls had a personal relationship with one or more of the Bank of Franklin officers who had supervisory authority at the Brookhaven Branch of Bank of Franklin;" (2) that Rawls deposited more than $85 million over six months in at least 891 transactions with the Bank of Franklin; (3) that "[d]espite its own internal policies and procedures, Bank of Franklin . . . took no steps to investigate, detect, report, or disclose Rawls' obviously suspicious banking activities to any regulatory or law enforcement agency;" and (4) that Rawls invoked his Fifth Amendment right against self-incrimination when questioned under oath "whether he gave anything of value to any employee, officer, or director of Bank of Franklin as part of his scheme" to convert money from Midwest Feeders. Compl. ¶¶ 77-80.  Midwest Feeders argues these four facts provide

15

circumstantial evidence of a conspiracy between Rawls and Bank of Franklin.

Bank of Franklin argues that Midwest Feeders is barred by res judicata from arguing an agreement existed between itself and Rawls, that Midwest Feeders has not properly pled the fraud or conversion on which the conspiracy is based, and that a negative inference from Rawls's invocation of the Fifth Amendment cannot be drawn against it. Mem. Supp. 20-24; Reply 24-25. Midwest Feeders argues instead that res judicata is inappropriate in this case and that the negative inference can be applied against Bank of Franklin. Mem. Opp. 18-21.

First, res judicata is inapplicable in this case. "A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983). Therefore, the Court must apply Kansas's res judicata law to determine the preclusive effect of prior litigation between Rawls and Midwest Feeders. Kansas law[4] requires: "(1) the same claim; (2) the same

---

[4] There are apparently two versions of the test for res judicata in Kansas jurisprudence. See Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego, 564 F. App'x 345, 348 (10th Cir. 2014). The second requires: "(1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of person for or against whom claim is made." Waterview Resolution Corp. V. Allen, 58 P.3d 1284, 1290 (Kan. 2002). The Tenth Circuit and the district court before it "found no Kansas cases discussing,

16

parties; (3) claims that were or could have been raised; and (4) a final judgment on the merits." <u>State v. Martin</u>, 279 P.3d 704, 706 (Kan. 2012). This case does not involve the same claims or the same parties.

Second, because the Court has already dismissed both claims for conversion above, the conspiracy claim cannot rest on that tort. The Court, however, finds that the claim for conspiracy can be supported by the fraud committed by Rawls.[5] Bank of Franklin argues that the elements of fraud have not been properly pled. In Mississippi, those elements are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

---

analyzing or even acknowledging the fact that courts sometimes articulate the test differently," and ultimately it upheld the district court's application of the "same claim" test because it was "most plainly stated" and there was "little or no substantive difference between the tests." <u>Tri-State Truck</u>, 564 F. App'x at 348 (internal quotation marks omitted). Therefore, this Court will apply that test, as well.

[5] Because this is a civil conspiracy to commit fraud, it is worth noting that the Mississippi Court of Appeals has separately enumerated the elements of this kind of conspiracy: "While Mississippi has never expressly defined the elements in a conspiracy to defraud suit, we agree that the common elements, generally accepted, are: 1) a conspiracy; 2) an overt act of fraud in furtherance of the conspiracy; and 3) damages to the plaintiff as a result of the fraud." <u>Delta Chem. & Petroleum</u>, 790 So. 2d at 377. Though the elements of this claim are stated slightly differently, the Court finds that the difference does not affect its analysis.

Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984). They must be shown by clear and convincing evidence. Id. Midwest Feeders did not separately plead fraud in this case because it does not make a claim for fraud against Bank of Franklin. The Court finds, however, that Midwest Feeders may rely on its assertion of Rawls' fraud to satisfy its pleading requirement. The Court finds that Midwest Feeder's allegation against Bank of Franklin whose alleged co-conspirator Rawls has already confessed to fraud is sufficient to survive a motion to dismiss.[6]

Third, a negative inference based on Rawls's invocation of the Fifth Amendment can be drawn against Bank of Franklin. "The Fifth Amendment 'does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" F.D.I.C. v. Fidelity & Deposit Co. of Maryland, 45 F.3d 969, 977 (5th Cir. 1995) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). And "a non-party's silence

---

[6] Because Rawls' admitted his fraud outside of Mississippi, the Court also finds that the elements of fraud in both jurisdictions, Kansas and Mississippi, are substantially similar. In a Kansas fraud action, a plaintiff must prove by clear and convincing evidence that:

> (1) false statements were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them.

Kelly v. Vinzant, 197 P.3d 803, 808 (Kan. 2008).

in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree." Id. (quoting RAD Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986)).

Ultimately, the Court finds that the circumstantial evidence alleged by Midwest Feeders is sufficient to create a factual inquiry regarding a civil conspiracy. Midwest Feeders has sufficiently alleged an agreement between Rawls and Bank of Franklin to defraud Midwest Feeders by not investigating Rawls' check scheme that resulted in substantial financial loss to Midwest Feeders. Therefore, the Court will deny the motion as to this claim.

### III. Conclusion

In sum, the Court finds that some of Midwest Feeders' claims against Bank of Franklin should be dismissed. The claim for UCC conversion must fail as a matter of law, and the claim for common law conversion has been fully supplanted by the UCC. The claim for failure to exercise ordinary care requires further factual development, as do the claims for negligence and negligent hiring and supervision. They therefore survive the motion. Lastly, the claim for civil conspiracy survives because Midwest Feeders sufficiently pled an agreement between Bank of Franklin and Rawls to defraud Midwest Feeders. Thus, based on the above reasoning, the Court grants in part and denies in part the motion to dismiss.

### IV. Order

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED IN PART and DENIED IN PART.

FURTHER ORDERED that the claims for conversion under the UCC and common law conversion are dismissed.


SO ORDERED this the 7th day of July 2015.


                         /s/ David Bramlette
                         UNITED STATES DISTRICT JUDGE