IN THE CHANCERY COURT OF LINCOLN COUNTY, MISSISSIPPI

MIDWEST FEEDERS, INC., )
 )
    Plaintiff, )
 )
v. )
 )  Case #: 2014-0195
ROBERT RAWLS D/B/A ROBERT )
RAWLS LIVESTOCK )
 )
    Defendant. )

FILED APR 0 8 2014 TILLMON BISHOP, Chancery Clerk

### AGREED ORDER FOR APPOINTMENT OF A RECEIVER

Upon the Complaint For Appointment of a Receiver And Other Relief filed by Midwest Feeders, Inc. ("Midwest"), and upon Robert Rawls d/b/a Robert Rawls Livestock's ("Rawls") consent thereto and upon good grounds appearing therefore, the Court finds and orders as follows:

1. Midwest Feeders, Inc. ("Midwest") is a Kansas corporation doing business at 05013 13 Road, Ingalls, Kansas 67853.

2. Defendant Robert Rawls d/b/a Robert Rawls Livestock ("Rawls") is an individual whose address is P.O. Box 3220, Brookhaven, MS 39603-7220.

3. Pursuant to Article IV, Section 159 of the Mississippi Constitution this court has jurisdiction over this matter.

4. Rawls has agreed to waive service of process and has voluntarily appeared in this action and has consented to the entry of this Agreed Order.

5. At Rawls' request the parties have agreed to venue in Lincoln County notwithstanding any provisions to the contrary in the loan documents described herein. Venue is proper in Lincoln County because Rawls can be found in Lincoln County and because Rawls has conducted business in Lincoln County.

6. On or about April 1, 2006, Rawls executed and delivered to Midwest his promissory note in the original principal amount of $7,000,000 (the "Note").

7. The Note is in default for numerous reasons, to which Rawls has admitted. No further notice of intent to accelerate, acceleration, presentment or demand is necessary, and all applicable grace and cure periods have expired.

8. The entire unpaid balance of the Note is immediately due and payable in full without further notices or presentment.

19039046.2

1

9. Midwest has made advances to Rawls in excess of the face amount of the Note.

10. As of April 3, 2014, the Note is fully funded and Midwest alleges that Rawls' obligations to Midwest exceed $40,000,000. Rawls acknowledges that his obligations are substantial, but at this juncture does not have sufficient information to confess an exact amount. Upon the appointment of a receiver as requested herein cattle sale transactions may close resulting in reductions in Rawls' indebtedness to Midwest.

11. Midwest is the current holder of the Note, and all conditions precedent for the maintenance of this action have been performed, satisfied or waived pursuant to the waiver provisions in the Note.

12. To secure the Note and Rawls' other obligations to Midwest, Rawls executed and delivered to Midwest numerous security documents specifically including, but not limited to the following (the "Security Documents"):

   A. Commercial Security Agreement dated April 1, 2006 (the "Security Agreement"); and

   B. Deposit Account Control Agreement dated April 1, 2006 (the "Control Agreement").

13. Pursuant to the terms of the Security Documents, Midwest has a security interest in, among other things, the following to secure the Note and all of Rawls' obligations to Midwest (the "Personal Property Collateral"):

   "Collateral" shall mean all of Debtor's personal property, both now owned and hereafter acquired, including, but not limited to:

   (a) Deposit accounts, accounts, accounts receivable or any right to receive money; arising from the sale of cattle and proceeds in conjunction with the use of the Deposit Agreement with Alva State Bank & Trust, Alva, OK.

   (b) All cattle purchased by debtor when the debtor pays for such cattle by use of the accounts described in Subparagraph (a) above.

   (c) General intangibles.

   (d) Proceeds and products of all of the foregoing.

The Personal Property Collateral includes Rawls' rights under numerous contracts to purchase or sell livestock.

14. The Security Documents are in default by virtue of, among other reasons, Rawls' defaults on the Note.

MWF-BOF 002267

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

15. Midwest's lien on the Personal Property Collateral by virtue of the Security Agreements was properly perfected by the filing of a Financing Statement filed with the Mississippi Secretary of State on December 21, 2010, at Reception No. 102409366 (the "Financing Statement") and by control under the Control Agreement.

16. The Security Agreement provides as follows with respect to the Personal Property Collateral:

### 7. RIGHTS AND REMEDIES

**7.1 Rights and Remedies of Creditor.** Upon and after the occurrence of an Event of Default, Creditor may, without notice or demand, exercise in any jurisdiction in which enforcement hereof is sought, the following rights and remedies, in addition to the rights and remedies available to Creditor under the Loan Documents, the rights and remedies of a secured party under the Uniform Commercial Code and all other rights and remedies available to Creditor under applicable law, all such rights and remedies being cumulative and enforceable alternatively, successively or concurrently:

(a) Declare all Obligations to be immediately due and payable and the same shall thereupon become immediately due and payable without presentment, demand for payment, protest or notice of any kind, all of which are hereby expressly waived.

(b) Institute any proceeding or proceedings to enforce the Obligations and any Liens of Creditor.

(c) Take possession of the Collateral, and for that purpose, so far as Debtor may give authority therefor, enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom without any liability for suit, action or other proceeding, Debtor HEREBY WAIVING ANY AND ALL RIGHTS TO PRIOR NOTICE AND TO JUDICIAL HEARING WITH RESPECT TO REPOSSESSION OF COLLATERAL, and require

Debtor, at Debtor's expense, to assemble and deliver the Collateral to such place or places as Creditor may designate.

(d) Operate, manage and control the Collateral (including use of the Collateral and any other property or assets of Debtor in order to continue or complete performance of Debtor's obligations under any contracts of Debtor), or permit the Collateral or any portion thereof to remain idle or store the same, and collect all rents and revenues therefrom and sell or otherwise dispose of any or all of the Collateral upon such terms and under such conditions as Creditor, in its sole discretion, may determine, and purchase or acquire any of the Collateral at any such sale or other disposition, all to the extent permitted by applicable law.

(e) Enforce Debtor's rights against any account debtors and other obligors.

17. As a result of Rawls' default on his obligations under the Note Midwest is entitled to exercise its rights as a secured party under the Mississippi Uniform Commercial Code with respect to the Personal Property Collateral and the proceeds therefrom and the products thereof.

18. Midwest has a right to possess the Personal Property Collateral, the proceeds therefrom and the products thereof superior to the rights of Rawls.

19. Midwest is also entitled to an order of this Court ordering Rawls to deliver the Personal Property Collateral and the proceeds therefrom and the products thereof to Midwest, or to the court-appointed receiver upon Midwest's direction, so Midwest can exercise its rights as a secured creditor under the Uniform Commercial Code including the right to dispose of the Personal Property Collateral on Rawls' property described below or at such other locations as are commercially reasonable.

20. To the best of Midwest's knowledge Rawls keeps the Personal Property Collateral at or near the locations described below:

    A. The Real Property Collateral (as defined below); and

    B. At various other locations currently unknown to Midwest, to include on producers properties, on leased properties, at backgrounding and preconditioning lots, in transit, and at feedlots in multiple jurisdictions.

21. The Note is secured by a Deed of Trust signed April 10, 2009 and recorded on April 16, 2009 in Book 1326, at Page 883, Lincoln County Records (the "Deed of Trust"), which grants Midwest a lien on the following described property (the "Real Property Collateral"):

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF LINCOLN STATE OF MISSISSIPPI:

Tract 1:
All that part of the NE 1/4, Section 1, Township 7 North, Range 6 East, described as follows: Beginning at the northeast corner of said Section 1, Township 7 North, Range 6 East, and running thence south 34 chains to the old Natchez and Monticello Public Road, thence north 61 degrees west 3 chains and 0 links, thence north 46 degrees west 5 chains and 83 links, thence north 34 degrees west 14 chains and 8 links, thence north 49 degrees west 9 chains and 0 links to the Pat Case Public Road, thence north 39 degrees west 3 chains and 73 links, thence north 13 degrees west 3 chains and 55 links, thence north 35-1/2 degrees west 5 chains and 86 links to the north boundary line of Section 1, thence east 28 chains and 50 links to the point of beginning.
LESS AND EXCEPT: 4.89 acres, currently assessed to Tom Loveless, et ux, and Glenn Loveless, et ux, and carried on the tax rolls of Lincoln County, Mississippi as parcels numbered 1011-20 and 1011-20 A.

Tract 2:
The NW 1/4, Section 6, Township 7 North, Range 7 East, Lincoln County, Mississippi.

Tract 3:
The SE 1/4 of the SE 1/4, Section 36, Township 8 North, Range 6 East, Lincoln County, Mississippi.

LESS AND EXCEPT: Therefore the following described property conveyed by Mrs. Eva S. Garnier, Conservator of the Estate of Mrs. Eva A. Vernon, to Paul Theodore Case, by deed dated June 19, 1972, and recorded in Book 638 at page 351 of said records, to-wit: The north 453.3 feet of the SE 1/4 of the SE 1/4, Section 36, Township 8 North, Range 6 East, being more particularly described as beginning at the northeast corner of said SE 1/4 of the SE 1/4, run thence south 453.3 feet, run thence west 1,294.5 feet, run thence north 453.3 feet, run thence east 1,294.5 feet to the point of beginning.

Tract 4:
The S 1/2 of the SW 1/4 and the S 1/2 of the N 1/2 and the N 1/2 of the S 1/2, Section 31, Township 8 North, Range 7 East, Lincoln County, Mississippi.

LESS AND EXCEPT: Therefrom the following described property conveyed by Mrs. Eva A. Vernon individually and as executrix of the estate of J. F. Vernon, deceased, to Lamar Case and Mrs. Lamar Case by deed dated March 29, 1944, and recorded in Book 241 at page 281 of said records, to-wit: All of the land in the S 1/2 of the NE 1/4 and the N 1/2 the SE 1/4 and the SE 1/4 of the NW 1/4, Section 31, Township 8 North, Range 7 East, lying north of the Brookhaven and Caseyville Road.

LESS: A parcel of land containing 18.73 acres, more or less, situated in the NW 1/4 of the SE 1/4 and the NE 1/4 of the SE 1/4 of Section 31, Township 8 North, Range 7 East, Lincoln County, Mississippi and being more particularly described as follows:

Commencing at the SE Corner of the NE 1/4 of the SE 1/4 of Section 31, said point being the Point of Beginning.

1. Thence run North 89 degrees 50 minutes 48 seconds West 855.27 feet along the south line of the NE 1/4 of the SE 1/4 to the centerline of Sam's Road, NW;
2. Thence run along said road, North 27 degrees 10 minutes 40 seconds West 133.13 feet;
3. Thence run along said road, North 31 degrees 32 minutes 28 seconds West 145.11 feet;
4. Thence run along said road, North 35 degrees 26 minutes 06 seconds West 353.0 feet;
5. Thence run along said road, North 32 degrees 19 minutes 01 seconds West 266.30 feet;
6. Thence run along said road, North 25 degrees 30 minutes 01 seconds West 72.57 feet;
7. Thence run along said road, North 12 degrees 32 minutes 07 seconds West 69.27 feet;
8. Thence run along said road, North 05 degrees 16 minutes 55 seconds East 123.66 feet to the south right-of-way of Highway 550;
9. Thence run along said right-of-way, South 64 degrees 12 minutes 32 seconds East 461.96 feet;
10. Thence run along said right-of-way a curve to the left the chord being South 79 degrees 43 minutes 01 seconds East 978.58 feet;
11. Thence run South 00 degrees 26 minutes 23 seconds West 637.66 feet to the Point of Beginning.

ALSO being all that part of the NW 1/4 of the SE 1/4 and the NE 1/4 of the SE 1/4 of Section 31, Township 8 North, Range 7 East, lying South of Highway 550 and East of Sam's Road, NW, Lincoln County, Mississippi.

Tract 5:

19039046.2

6

MWF-BOF 002271

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

A parcel of land containing 8.0 acres, more or less, situated in Lot 1 of Section 36, North of Trace, Township 8 North, Range 6 East, Lincoln County, Mississippi, and being more particularly described as follows: Commencing at the Southeast corner of said Lot 1 of Section 36, North of Trace, run thence North 00 degrees 45 minutes West 606.0 feet to the point of beginning; thence run South 83 degrees 13 minutes 07 seconds West 822.98 feet; thence run North 02 degrees 29 minutes 47 seconds East 401.44 feet; thence run South 85 degrees 07 minutes West 457.86 feet to the East boundary of Jackson-Liberty Drive NW; thence run along said road North 09 degrees 19 minutes East 30.95 feet; thence run North 85 degrees 07 minutes East 1250.20 feet along a property fence to a fence corner; thence run South 00 degrees 45 minutes East 401.90 feet along a property fence to the point of beginning.

Tract 6:
A parcel of land containing 10.50 acres, more or less, situated in Lot 1 of Section 36, North of Trace, Township 8 North, Range 6 East, Lincoln County, Mississippi, and being more particularly described as follows: Commencing at the Southeast corner of said Lot 1 of Section 36, North of Trace, said point being the point of beginning; thence run North 70 degrees 08 minutes West 254.20 feet along a property fence on the South line of said Lot 1; thence run North 70 degrees 30 minutes West 316.40 feet along a property fence on the South line of said Lot 1; thence run North 75 degrees 27 minutes West 582.10 feet along a property fence on the South line of said Lot 1; thence run North 86 degrees 39 minutes West 248.50 feet along a property fence on the South line of said Lot 1 to the East boundary of the Jackson-Liberty Drive NW; thence run along said road North 09 degrees 19 minutes East 248.97 feet; thence run South 79 degrees 29 minutes 38 seconds East 491.65 feet; thence run North 83 degrees 13 minutes 07 seconds East 822.98 feet; thence run South 00 degrees 45 minutes East 606.0 feet along a property fence to the point of beginning.

22. The Deed of Trust is in default by virtue of the default under the Note and for other reasons.

23. The Deed of Trust provides for the following in the event of a default:

> Upon the maturity of the indebtedness hereby secured, either by lapse of time or by reason of any default as herein provided or if at any time it becomes necessary to protect the lien of this conveyance, the Beneficiary, or any owner, or holder of the Note secured hereby, shall have the right to forthwith enter into and upon the property hereinbefore described and take possession thereof, and collect and apply the rents, issues and profits thereon upon the indebtedness secured hereby, or may, if it is so desired, have a receiver

MWF-BOF 002272

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

appointed by any court of competent jurisdiction to collect and impound the said rents, issues and profits and after paying the expense of such receivership apply the balance thereof to the payment of any indebtedness secured hereby.

24. Hereafter the Personal Property Collateral and the Real Property Collateral are collectively referred to as the Collateral.

25. Rawls has failed or has been unable to make the payments due on the Note. Midwest reasonably fears that the Collateral, including its proceeds, products, rents, issue, and profits are in danger of being materially injured, reduced in value or lost, and that there is a danger of waste being committed to the Collateral and the proceeds, products, rents, issue and profits through neglect unless a receiver is immediately appointed by this Court.

26. The Collateral constituting the security for the Note is inadequate.

27. Miss. Code. Ann §11-5-151 provides for the appointment of a receiver when appropriate. Rawls agrees that the appointment of a receiver is appropriate, and Rawls has consented to the appointment of a receiver as provided herein.

28. Rawls has proposed that Hugh Byrd be the appointed receiver. Hugh Byrd is acceptable to Midwest. Hugh Byrd is qualified to be appointed as receiver for the Collateral.

29. A receiver's bond is not warranted and Rawls has agreed that the receiver can serve without bond.

30. Rawls has consented to the entry of this Order.

Upon such finding, this Court hereby enters the following Orders:

IT IS ORDERED that Hugh Byrd is appointed to serve as Receiver for the Collateral described above and is charged with the following duties: to protect, preserve, and liquidate the Collateral; to collect all keys which affect or concern the Collateral; to change all locks concerning the Collateral; to pay all bills and costs necessary to preserve and insure the Collateral arising after the date of his appointment; to enter into such further contracts and arrangements as are reasonably necessary to maximize the proceeds and products of the Collateral; to exclude Rawls and their employees and agents from the Collateral; to have the sole and exclusive authority to deal with tenants, employees, management companies, vendors, buyers, and commissioned salesmen concerning the Collateral; to terminate or renegotiate all leases and contracts, and to collect receivables and other accounts due on account of the Collateral, and such payments shall be made directly to Midwest for application towards the unpaid balance of Note; to deal with all utility service providers for the Collateral; to have sole and exclusive authority to terminate existing leases and contracts, and to enter into new leases and contracts for the Collateral on such terms as the Receiver deems fair; to pay all taxes due on account of the Collateral only to the extent they constitute liens senior to Midwest's liens; to maintain insurance on the Collateral in an amount reasonably necessary and appropriate; to borrow money and to offer the Collateral as security

MWF-BOF 002273

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

therefor as the Receiver deems appropriate; to take possession of all Rawls' books and records concerning the Collateral; to hire employees, independent contractors, and management companies to deal with the Collateral; to irrigate, fertilize, and otherwise cultivate, harvest, and sell growing or harvested crops constituting Collateral or growing on the Collateral; to collect all USDA FSA payments concerning the Collateral and to execute such documents as the USDA FSA may require with respect to the Collateral to the extent any of the Collateral is enrolled in any USDA programs; and to sell or liquidate Collateral as appropriate and to pay the proceeds therefrom directly to Midwest for application towards the unpaid balance of Note and, in particular, with respect to crop Collateral, and to the extent there is any crop Collateral, harvest and deliver the same to one of the three closest public elevators, and with respect to livestock Collateral, to round up and deliver the same to public livestock exchanges or creditworthy buyers and to immediately sell the same at the current market price upon delivery without incurring market risk or expense by holding or feeding the same, and pay the proceeds therefrom to Midwest for application towards the unpaid balance of the Note, and to complete, close on, assign, terminate, renegotiate, compromise or reject all contracts concerning livestock collateral specifically including but not limited to all forward contracts concerning livestock and all contracts to purchase or sell livestock; to hire counsel, accountants and consultants; to establish bank accounts and to use the Rawls' Social Security number for this purpose; to pay the Receiver's bills which he incurs (but not the Rawls' bills) and to use the Rawls' Social Security number for this purpose; to operate, in whole or in part the livestock receiving station or to immediately shut down the same as the Receiver determines is best; and to have all the authority usually held by Receivers and reasonably necessary to accomplish the purposes stated herein; and

Nothing in this order forecloses third parties from asserting conflicting rights or liens on the Collateral.

IT IS FURTHER ORDERED that the Receiver may, but is not obligated to operate the livestock receiving station and may shut down the foregoing at any time; and

IT IS FURTHER ORDERED that if the Receiver operates the livestock receiving station, he shall not be deemed to have accepted or assumed any executory obligations the Rawls may have; and

IT IS FURTHER ORDERED that the Receiver may abandon any Collateral he deems to be of inconsequential value without further order of the Court; and

IT IS FURTHER ORDERED that the giving of the Receiver authority to act or make payment hereunder shall not be deemed to be an instruction to act or make payment hereunder unless the Receiver deems it is in the best interest of this special Receivership to do such act or to make such payment; and

IT IS FURTHER ORDERED that this is a special receivership with the Receiver's duties as stated above. This is not a general receivership. The Receiver is _not_ responsible for managing the Rawls' business affairs, investigating or prosecuting potential claims against the Rawls; evaluating whether or not the Rawls should file or continue in a bankruptcy, filing any tax returns or reports, including any federal, state, or local tax returns, sales or use tax returns, or workman's

MWF-BOF 002274

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

compensation reports or for paying, processing, investigating, or defending against any unsecured claims occurring or incurred prior to his appointment or claims or bills incurred by the Rawls; and

IT IS FURTHER ORDERED that the rents, issue, profits, and proceeds of the Collateral shall be paid directly and solely to Midwest for application towards the unpaid balance of the Note, and

IT IS FURTHER ORDERED that the Receiver shall not pay any pre-Receivership expenses, contracts, or leases; and

IT IS FURTHER ORDERED that the Receiver may obtain funds for the purpose of preserving, protecting, and liquidating Collateral and the Collateral by requesting and receiving advances directly from Midwest on account of the Note, and such advances shall be deemed to be an additional indebtedness of the Rawls on account of the Note; and

IT IS FURTHER ORDERED that the Receiver shall not be bound by, or obligated under any pre-Receivership leases and contracts of the Rawls; and

IT IS FURTHER ORDERED that the Receiver shall file a final report with this Court; and

IT IS FURTHER ORDERED that by agreement of the parties no Receiver's Bond is appropriate or ordered; and

IT IS FURTHER ORDERED that the Receiver shall be compensated at the rate of $100 per hour plus the Receiver's out of pocket expenses; and

IT IS FURTHER ORDERED that this Order shall be effective immediately.

Dated this 8 day of April, 2014.

BY THE COURT:

By: _____
Chancery Court Judge of Lincoln County

Approved as to form:

_____
ROBERT RAWLS d/b/a
ROBERT RAWLS LIVESTOCK

MARC E. BRAND & ASSOCIATES

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

_____
Spencer Clift
165 Madison Avenue
Suite 2000

19039046.2

10

MWF-BOF 002275

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver

_____
Marc E. Brand
Suite 1600 A
Capital Towers
125 South Congress Street
Jackson, MS 39201-3301
Telephone: (601) 354-7878
Fax: (601) 718-6125
Email: marc@brandlawfirm.com
*Attorneys for Defendant Robert Rawls d/b/a Robert Rawls Livestock*

Memphis, Tennessee 38103
Telephone: (901) 577-2216
Fax: (901) 577-0834
Email: sclift@bakerdonelson.com

And

John O'Brien *(Pro Hac Vice Motion to be filed)*
Tim O'Neill *(Pro Hac Vice Motion to be filed)*
SNELL & WILMER L.L.P.
1200 Seventeenth St., Suite 1900
Denver, CO 80202
Telephone: (303) 634-2000
Fax: (303) 634-2020
Email: jobrien@swlaw.com;
toneill@swlaw.com
*Attorneys for Plaintiff Midwest Feeders, Inc.*

MWF-BOF 002276

EXHIBIT 4
04/08/14 Agreed Order for Appt. of a Receiver