IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MIDWEST FEEDERS, INC.**                                                                                         **PLAINTIFF**

v.                                                                                   **CIVIL ACTION NO. 5:14cv78-DCB-MTP**

**THE BANK OF FRANKLIN**                                                                                         **DEFENDANT**

**ORDER**

THIS MATTER is before the Court on the Motion to Strike Plaintiff's Expert Designation [220] filed by Defendant Bank of Franklin. Having considered the parties' submissions, the Court finds that the Motion [220] should be granted in part and denied in part.

Pursuant to the Case Management Order [41], Plaintiff's expert designation deadline ran on April 1, 2016, and Defendant's expert designation deadline ran on May 16, 2016. On April 1, 2016, Plaintiff designated two experts, Cathy C. Glassman and Edward B. Cordes. *See* Exhibit [220-1]. On May 16, 2016, Defendant designated five experts, Paul Carrubba, Craig Landrum, Annette Herrin, Odean Busby, and Rollie Rexroth. *See* Exhibit [253-3]. Subsequently, on June 16, 2016, Plaintiff designated John Barthel as a rebuttal expert. *See* Exhibit [220-2].

On June 24, 2016, Defendant filed the instant Motion [220], requesting an order from the Court striking Plaintiff's designation of Barthel. Defendant argues that the designation is untimely pursuant to the Case Management Order [41]. Specifically, Defendant argues that the Case Management Order [41] does not allow for rebuttal experts and that the designation should be stricken because it was filed after Plaintiff's April 1, 2016, expert designation deadline. In response, Plaintiff argues that its designation of Barthel is governed by Federal Rule of Civil Procedure 26(a)(2)(D)(ii) and, therefore, is timely. This rule provides as follows:

1

>A party must make these disclosures at the times and in the sequence that the court orders.  Absent a stipulation or a court order, the disclosures must be made:
>. . .
>
>(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D)(ii).

The Case Management Order [41] sets deadlines for expert designations, but it does not expressly address the issue of rebuttal experts.  Thus, the primary issue before the Court is whether the provisions of Rule 26(a)(2)(D)(ii) apply where a case management order is silent regarding rebuttal witnesses.  Courts have not been consistent in answering this question.  *Compare Hostetler v. Dillard*, 2014 WL 11514964 (S.D. Miss. Aug. 29, 2014) (holding that because the case management order was silent as to rebuttal experts, Rule 26(a)(2)(D)(ii) controlled and allowed the plaintiff to designate a rebuttal expert thirty days after the defendant's expert designation) *with Estate of Vaughan v. Kia Motors America, Inc.*, 2006 WL 1806454 (S.D. Miss. June 29, 2006) (holding that the plaintiffs were not allowed to make a second designation of experts to rebut defendants' experts without leave of court).

This Court finds that, given the procedural history of this case and the absence of an express order regarding rebuttal witnesses, the provisions of Rule 26(a)(2)(D)(ii) apply, allowing Plaintiff to designate a rebuttal expert within thirty days after Defendant's designation.[1]

---

[1] Defendant argues that, even if Rule 26(a)(2)(D)(ii) is applicable, Plaintiff's designation of Barthel is untimely because it was made on June 16, 2016, which is *thirty-one* days from the date of Defendant's expert designations.  The Federal Rules of Civil Procedure, however, provide that "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d).  Accordingly, Plaintiff rebuttal expert designation was timely.

Defendant also argues that Barthel is not actually a rebuttal expert.  Indeed, "[o]nly when the defendant's expert raises new issues in his report that were not raised in the plaintiff's expert's report and the plaintiff must call a new expert to rebut that information is there a need for a rebuttal expert designation." *Estate of Vaughan*, 2006 WL 1806454, at *2.  Plaintiff initially designated Glassman as an expert on the banking industry and the standard of care in that industry.[2]  Glassman concludes that "1) Bank of Franklin did not exercise ordinary care and did not have guidelines or policies sufficient to meet reasonable commercial standards with respect to the deposits at issue in this litigation; and 2) Bank of Franklin turned a blind eye to the fraud Rawls' [sic] was perpetrating on Midwest Feeders, Inc." *See* Report [253-1] at 4.  Relevant to the instant dispute, Glassman states that Rawls, utilizing an account funded by Plaintiff at Alva State Bank, wrote checks payable to fictitious cattle sellers, then falsified the endorsements, and used a stamp to indicate that the checks should be payable to the order of Rawls. *Id*.  Glassman states that Defendant Bank of Franklin accepted 891 of these checks. *Id*.  Glassman goes on to state that a well-trained teller would have viewed these checks as suspicious and lacking business purpose. *Id*.

Defendant designated three experts from the banking industry–Carrubba, Landrum, and Busby–who relied on a previously undisclosed affidavit of Charles Bart Magee, Jr., Defendant's Executive Vice President.  In his affidavit, Magee states that he and Rawls discussed why checks endorsed back to Rawls were being deposited, and Rawls explained as follows:

> [S]mall sellers generally acquire calves, put weight on the calves and sell them at a

---

[2] Plaintiff also designated Cordes as a damages and causation expert with specific expertise in forensic accounting related to agricultural enterprises and the causation of damages. *See* Letter [253-2].

>       profit and then repeat the process.  Often, . . . he would write the seller a check and
>       the seller would sign the back of the check to provide funds for Mr. Rawls to buy the
>       seller a new set of calves to start the process over again.

*See* Report [253-5] at 11.  Defendant's experts opine that this information helps demonstrate that Defendant did not fall below the standard of care in the banking industry.  For example, Landrum states that Rawls's explanation "provided a legitimate business purpose for depositing checks issued to sellers of cattle into his business checking account upon a proper endorsement."  *Id*.

In its Response, Plaintiff argues that it designated an expert on the livestock industry as a rebuttal witness, in part, to address why the actions detailed in Magee's affidavit and relied upon by Carrubba, Landrum, and Busy could not qualify as acts taken in good faith.  According to Barthel, "[e]ven the most basic of due diligence regarding this alleged explanation would have quickly revealed that there was no legitimate business purpose associated with Rawls' use of checks payable to third parties, but endorsed back for deposit by Rawls.  Anyone with any experience in the cattle industry would immediately recognize the fraudulent basis of this statement."  *See* Report [220-2] at 9.  The Court finds that Barthel's opinions regarding Magee's affidavit are in the nature of rebuttal opinion and, therefore, should not be stricken as requested.

Another of Defendant's experts, Roland Rexroth, opines that Plaintiff did not exercise due diligence when it failed to inspect cattle inventory or verify accounts receivable due from cattle purchases and, as a result, failed to detect the alleged fraudulent activity of Rawls.  *See* Report [253-7] at 1.  Rexroth states that "[a] best practices approach to pasture cattle inventory inspections by lenders is to conduct the inspection at least six times per year to determine weight, head count and health condition.  Likewise, accounts receivable should have been

verified periodically to confirm that the cattle buyers actually received the cattle and acknowledged that they owed the money." *Id.* at 2.  Rexroth also states that Plaintiffs internal controls were weak because Plaintiff allowed Rawls to write handwritten checks which did not automatically result in cattle inventory information being uploaded to Plaintiff's software. Finally, Rexroth states that Plaintiff's relationship with Rawls was beyond the scope of a lending relationship. *Id.* at 3.

Plaintiff argues that it designated Barthel as a rebuttal expert in order to address the standards and acceptable practices in the livestock industry.  Barthel states that the Packers & Stockyards Act and the regulations issued under the Act allow an entity such as Plaintiff to establish clearing accounts, which allow dealers to engage in the purchase and sale of cattle with a great degree of liquidity.  Barthel opines that "Midwest's contractual arrangements with Robert Rawls Livestock and Alva State Bank and Trust . . . were accepted practice in the cattle industry." [220-2] at 8.  The Court finds that Barthel's opinions are in the nature of rebuttal opinion.

Based on the foregoing, the Court finds that Barthel is a rebuttal expert, designated for the limited purpose of contradicting or rebutting (1) the opinions of Carrubba, Landrum, and Busy regarding the impact of Magee's affidavit and (2) Rexroth's opinion that Plaintiff did not exercise due diligence when it failed to inspect cattle inventory or verify accounts receivable due from cattle purchases to detect the alleged fraudulent activity of Rawls.

Finally, Defendant argues that it should be allowed to designate a surrebuttal expert.  As previously explained, Plaintiff was entitled to rebut Defendant's experts' opinion that Rawls's explanation to Magee regarding the endorsed check constituted a legitimate business reason for

Rawls to deposit the checks. However, to rebut these opinions, Plaintiff's rebuttal expert referred to common practices within the livestock industry. Likewise, Plaintiff's rebuttal expert relied on discrete standards within the livestock industry to rebut Rexroth's opinions. Thus, the topic being discussed by experts drifted from banking standards to standards within the livestock industry. Accordingly, the Court finds that Defendant should be afforded an opportunity to designate a surrebuttal expert for the limited purpose of contradicting or rebutting Barthel's opinions.[3]

IT IS, THEREFORE, ORDERED that:

1. Defendant's Motion to Strike Plaintiff's Expert Designation [220] is GRANTED in part and DENIED in part,

2. To the extent Defendant seeks an order striking John Barthel as an expert witness, the Motion [220] is denied,

3. To the extent Defendant seeks leave to designate a surrebuttal expert, the Motion [220] is granted, and

4. On or before August 12, 2016, Defendant may designate a surrebuttal expert for the sole purpose of contradicting or rebutting the expert opinions of John Barthel.

SO ORDERED, this the 29th day of July, 2016.

s/ Michael T. Parker
United States Magistrate Judge

---

[3] "[T]he decision of whether to allow a party to present evidence in rebuttal or surrebuttal is generally committed to the trial court's discretion." *Louisiana Health Care Self Ins. Fund v. United States*, 2014 WL 3720526, at *1 (M.D. La. July 25, 2014).