IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

Civil Action No. 5:14-CV-00078-DCB-MTP

MIDWEST FEEDERS, INC.,

    Plaintiff,

v.

THE BANK OF FRANKLIN

    Defendant.

___

**MIDWEST FEEDERS, INC.'S MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS**
___

    Plaintiff Midwest Feeders, Inc. (**"Midwest"**) submits this Memorandum Brief in Support of its Motion for Sanctions, stating as follows:

## INTRODUCTION

    Rule 26 required Defendant Bank of Franklin (**"BOF"**) to disclose ""**any** insurance agreement under which an insurance business **may** be liable to satisfy **all or part of**" a judgment on Midwest's claims. One month ago, BOF obliquely divulged a lawsuit it filed against its insurer, prompting Midwest to review filings in that lawsuit. Those filings revealed a massive course of deception by BOF in violation of Rules 26 and 37.

    At the outset of discovery, BOF disclosed only one policy under Rule 26(a)(1)(A)(iv). That policy had minimal coverage. But a year before that, BOF had identified and claimed coverage for Midwest's claims under multiple additional policies that BOF hid from Midwest. Those polices provide millions of additional potential coverage dollars. When Midwest tried to unravel BOF's coverage in discovery, BOF's counsel affirmatively represented, in a filing signed

under Rule 11, that "BOF does not have any excess liability policy covering the time-period of this claim." In truth, BOF knew that it had at least one such excess liability policy. In short, for years BOF has concealed discoverable insurance documents from Midwest, and BOF has made false statements concerning its insurance to Midwest and this Court.

BOF's deception undermined every facet of this case. A defendant's insurance coverage heavily influences, if not dictates, the type and extent of discovery and expert involvement in any plaintiff's strategy. This case was no exception. A defendant's insurance coverage also heavily influences, if not dictates, settlement positions. Again, this case was no exception. BOF's decision to misrepresent and conceal potential insurance coverage has sabotaged discovery and settlement and mediation and the integrity of proceedings in this Court.

BOF has no substantial justification for its misrepresentations and concealment and the Court should not permit BOF to skate by these violations. Rather, this Court should impose severe sanctions for BOF's bad faith conduct.

## BACKGROUND

**I. BOF'S EARLY KNOWLEDGE OF INSURANCE AGREEMENTS SUBJECT TO DISCLOSURE UNDER RULE 26(a)(1)(A)(iv)**

Days after Midwest filed this action, BOF notified its insurer of Midwest's claims. Compare Complaint [ECF 1], filed September 4, 2014, with Verified Complaint for Injunctive and Other Relief (the **"Insurance Complaint"**) in Civil Action No. 3:16cv921-DPJ-FKB, filed November 21, 2016, ¶¶ 8, 19, attached as **Exhibit 3** to Midwest's Motion for Sanctions. At the time BOF notified its insurer of this action, BOF maintained several policies that provided potential coverage. See Exhibit 3 at ¶¶ 6-10, 11-16, 24-27, 40-44. These policies included:

- A four-part insurance package (the **"Portfolio"** policy) comprised of:

- A Bankers Professional Liability Coverage plan;
- A Directors and Officers Liability Coverage plan;
- An Employment Practices Liability Coverage plan; and
- A Fiduciary Liability Coverage plan.  See Exhibit 3 at ¶¶ 6-9.

▪ A bond (the **"Bond"**), which included coverage for, among other things:
- Employee dishonesty;
- Forgery or alteration;
- Extended forgery;
- Unauthorized signature and endorsement; and
- Check kiting.  See id. at ¶¶ 11-14.

▪ A Corporate General Liability (**"CGL"**) policy.  See id. at ¶¶ 24-27.

▪ An Umbrella policy.  See id. at ¶¶ 40-44.

The Insurance Complaint reveals that BOF knew since 2014 that BOF had tens of millions of dollars in potential insurance coverage.  See id. at ¶¶ 6-16, 24-33, 40-50.  Yet BOF disclosed only a fraction of its potential coverage.

## II. BOF'S MISREPRESENTATIONS IN INITIAL DISCLOSURES

Despite the potential for tens of millions of dollars in insurance coverage under multiple policies, BOF has only disclosed its Portfolio policy in this litigation.  See BOF's Initial Disclosures, served September 2, 2015, at 8, attached as **Exhibit 1** to Midwest's Motion for Sanctions; and Portfolio policy, dated August 6, 2012, attached as **Exhibit 2** to Midwest's Motion for Sanctions.  At the same time it served its initial disclosures, BOF also served its initial responses to Midwest's First Set of Written Discovery.  See Response to First Set of

3

Requests for Production [ECF 53-1], served September 2, 2015, at 10.  Of note here, BOF refused to produce any documents related to communications with insurance or surety companies related to this action.  See id. at 8.  Only after Midwest threatened to move to compel the production of such documents did BOF produce a heavily redacted reservation of rights letter. See Email from Scott Sandberg [ECF 53-3], dated October 20, 2015, at 1; Supplemental Response to First Set of Requests for Production [ECF 154-1], served December 3, 2015, at 20; and Letter from Brian C. Davis [ECF 154-4], dated September 18, 2014.

### III.     MIDWEST'S RELIANCE ON BOF'S MISREPRESENTATIONS

Immediately upon receiving BOF's initial disclosures in September 2015, Midwest closely evaluated potential insurance coverage available under the lone policy BOF disclosed. Because this policy revealed paltry and eroding coverage, Midwest factored that purported coverage into its settlement and discovery strategies.[1]

Believing little or no coverage was available under BOF's single disclosed policy, Midwest immediately made a written settlement proposal to BOF that included terms other than cash payment.  Midwest then factored the insurance coverage represented by BOF into Midwest's discovery plans and strategy.  Throughout the entire course of discovery, the paltry coverage in the sole policy disclosed by BOF heavily influenced:

- The amount and extent of written discovery Midwest served;

- The extent to which Midwest sought to compel responses to discovery for which BOF improperly objected;

---

[1] Now, BOF alleges that counsel provided by its insurer has expended exorbitant resources litigating this action in order to exhaust available coverage.  See Exhibit 3 at ¶¶ 90.ii, 90.iii, 104, 150, 165, 170.  Such litigation tactics, obvious since the start of this litigation, made the disclosed coverage appear minimal at best.

- The number of expert witnesses retained by Midwest;
- The scope of services for which Midwest retained experts;
- The number of depositions taken by Midwest; and
- Whether to challenge BOF's experts.

As with every litigation decision, the amount of recovery available heavily influenced each of these decisions. Had BOF truthfully represented insurance that potentially covered Midwest's claim, Midwest's approach to this case would have been dramatically different.

## IV. BOF'S CONTINUED MISREPRESENTATIONS THROUGHOUT DISCOVERY

During subsequent communications, counsel for BOF intimated that additional insurance, generically referred to as an "excess liability policy," may apply to Midwest's claims. Having received no additional insurance documents, Midwest moved to compel production of all potentially applicable insurance documents and an un-redacted copy of the reservation of rights letter. See Memorandum re Second Motion to Compel [ECF 155], filed May 24, 2016, at 8. In response to Midwest's Motion, BOF stated that it had "produced the insurance agreement which covers this litigation as required under the Federal Rules of Civil Procedure." See Response to Second Motion to Compel [ECF 174], filed June 7, 2016, at 3. BOF also stated "there is no excess liability policy covering the time-period of the allegations in the Complaint." See Memo re Response to Second Motion to Compel [ECF 175], filed June 7, 2016, at 8-9; Response to Second Motion to Compel [ECF 174] at 3 ("BOF does not have any excess liability policy covering the time-period of this claim"). Taking BOF at its word, Midwest withdrew its request for production of additional, potentially applicable insurance policies because Midwest assumed

5

BOF had truthfully represented the amount of potentially available insurance to this Court.  See Reply re Second Motion to Compel [ECF 188], filed June 17, 2016, at 7 n.3.

Throughout discovery, BOF aggressively claimed that all of its insurance-related documents were highly sensitive and confidential, heavily redacting a reservation of rights letter and marking the sole policy it disclosed as "CONFIDENTIAL" under this Court's Protective Order.  Those representations concerning the documents proved untrue—BOF filed un-redacted and complete copies of these and many other insurance documents as publicly-available exhibits to the Insurance Complaint.

## V.    THE WASTED MEDIATION

On November 1, 2016, the parties attended a court-ordered mediation.  BOF insisted that the mediation occur in Jackson, Mississippi, so Midwest and its counsel traveled there.  During mediation, Midwest's settlement offers and positions were heavily influenced by BOF's disclosures and representations to this Court concerning available insurance.  Not knowing those disclosures and representations were false, Midwest negotiated in the dark and was limited in the types of settlement offers it made.  The mediation ended in less than ½ day without a settlement.

## VI.   MIDWEST'S DISCOVERY OF BOF'S MISREPRESENTATIONS

On December 19, 2016, BOF's counsel sent an email to this Court, copying Midwest's counsel, informing the Court and Midwest of a lawsuit BOF had filed against its insurer. Midwest pulled the Insurance Complaint and related documents and learned, for the first time, of BOF's false statements and concealment concerning available insurance. Examining the Insurance Complaint, Midwest became aware of the depth and breadth of BOF's deception and dishonesty regarding potential insurance coverage.  According to the Insurance Complaint, BOF

claims entitlement to insurance benefits under the still undisclosed Bond, CGL, and Umbrella policies, in addition to the previously produced Portfolio policy. See Exhibit 3 at ¶¶ 6-10, 11-16, 24-27, 40-44. Yet, well over two years into this action, BOF has failed to produce any Bond, CGL, or Umbrella policy. When asked directly whether any additional coverage may apply to the claims at issue, BOF affirmatively represented to both Midwest and this Court that no such coverage existed.

The Insurance Complaint demonstrates BOF has known since 2014 that tens of millions of dollars in potential insurance coverage exists under the Portfolio, Bond, CGL, and Umbrella policies. See generally Exhibit 3. This coverage includes:

- Between $5 million and $7 million under the Portfolio policy. See Exhibit 3 at ¶¶ 9-10.
- $5.25 million in Bond coverage. See id. at ¶ 14.
- $3 million under the CGL policy. See id. at ¶¶ 24-28, 31-32.
- Between $4 million and $8 million under the Umbrella policy. See id. at ¶¶ 40-45, 48-49.[2]

Despite its coverage position, BOF has failed to comply with Rule 26(a)(1)(A)(iv) and produce all potentially applicable Portfolio, Bond, CGL, and Umbrella policies. Moreover, BOF has denied the existence of other potentially applicable insurance coverage in filings with this Court.

## LEGAL STANDARD

Rule 26(a)(1)(A)(iv) requires a party to disclose, "without awaiting a discovery request," "**any** insurance agreement under which an insurance business **may** be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy

---

[2] BOF also claims that coverage exists under three different coverage years for the Portfolio, CGL, and Umbrella policies, tripling the amount of potentially available coverage for each. See Exhibit 3 at ¶¶ 9-10, 24-28, 40-45.

the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv)(emphasis added). Rule 26's plain language imposes a broad scope of required disclosure. See Rhodes v. Davis, 2010 WL 4260048, at *5 (S.D. Ala. 2010)(emphasizing party "must provide" "any" insurance agreement that "may" apply); Fed. R. Civ. P. 26(a)(1)(A)(iv). "The purpose behind the disclosure of insurance coverage is to provide information to allow counsel to make a realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Anchondo v. Anderson, Crenshaw & Assocs., 2011 WL 4549279, *2 (D. N.M. 2011); Palacino v. Beech Mountain Resort, 2015 WL 8731779, *2 (W.D. N.C. 2015)("the very purpose of the enactment of the initial disclosure requirements [was] to require parties to reveal basic information needed in almost every civil case to their adversaries at the beginning stages of litigation without the need for formal discovery requests").

Signatures on disclosures made pursuant to Fed. R. Civ. P. 26(a)(1) certify that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). When "a certification violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Id. Both attorneys and their respective law firms are subject to sanctions issued under Rule 26(g). See Johnson Int'l v. Jackson Nat'l, 19 F.3d 431, 438-39 (8th Cir. 1994).

Under Rule 37(c)(1), a court may sanction a party that "fails to provide information . . . as required by Rule 26(a)." A court's sanction can include "payment of the reasonable expenses,

8

including attorney's fees, caused by the failure;" "inform[ing] the jury of the party's failure;" and imposition of "other appropriate sanctions," including rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(c)(1)(A)-(C). "Even negligent failures to comply with discovery orders fall within Rule 37's ambit." PIC Grp. v. LandCoast Insulation, 2011 WL 2669144, at *10 (S.D. Miss. 2011); Sun River Energy v. Nelson, 800 F.3d 1219, 1227 (10th Cir. 2015)(bad faith is not a prerequisite for Rule 37(c)(1) sanctions).

In addition to their Rule 26 and 37 powers, district courts retain inherent authority to sanction parties for bad faith conduct. See Chambers v. NASCO, 502 U.S. 32, 50 (1991); Anchondo, 2011 WL 4549279, at *4. "[I]f the court determines that the Rules do not provide an adequate sanction, the court may rely on its inherent power." Anchondo, 2011 WL 4549279, at *4. "The court's inherent power to sanction litigation misconduct authorizes the court to fashion sanctions as severe as . . . entering judgment against a party and also includes imposing attorney's fees for the entire cost of the litigation." Id. at *5. This inherent authority extends to actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 502 U.S. at 45-46. "The inherent power of the court extends to a full range of litigation abuses and reaches conduct both before the court and beyond the court's confines." Anchondo, 2011 WL 4549279 at *4. Applicable here, "[f]alse . . . submissions are intolerable because they erode public confidence in judicial decisions and undermine the entire judicial process." Id. at *6.

## ARGUMENT

**I. BOF'S CONCEALMENT OF DISCOVERABLE INSURANCE POLICIES VIOLATED RULES 26(a)(1)(A)(iv), 26(g)(1), and 37(c)(1)**

BOF's failure to disclose all insurance policies that may apply constitutes a per se violation of Rule 26(a)(1)(A)(iv). The Rule does not require disclosure of only policies under

9

which an insurer has accepted coverage, it expressly requires disclosure of "**any** insurance agreement under which an insurance business **may** be liable." (Emphasis added).  BOF's Insurance Complaint states that at least three CGL policies, three Umbrella policies, multiple Portfolio policy coverage years, and a Bond may create liability for an insurance business.  But, BOF has only produced its Portfolio policy.  This currently leaves at least seven policies undisclosed (over two years after BOF was required to produce them) and BOF in violation of Rule 26(a)(1)(A)(iv).

When a signed disclosure is incomplete and incorrect when made, a party violates Rule 26(g).  See Fed. R. Civ. P. 26(g)(1)(A).  Violations of Rule 26(g) mandate sanctions, which "may include an order to pay reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3); Food Team Int'l v. Unilink, 595 Fed. App'x 146, 151 (3rd Cir. 2014).  Rule 37(c)(1) also provides for sanctions resulting from Rule 26 violations.  Fed. R Civ. P. 37(c)(1).  The only defenses to sanctions under Rule 37(c)(1) are substantial justification or harmlessness.  See id.  Here, Rules 26(g)(3) and 37(c)(1) subject BOF to sanctions for failing to disclose at least seven different discoverable policies.

    A.    **BOF'S VIOLATION WAS NOT SUBSTANTIALLY JUSTIFIED**

When a party violates Rule 26(g), the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).  Rule 26(g)(3) mandates the sanction unless the violation was substantially justified.  See id.  To be substantially justified, a party's Rule 26(g)(1) certification must meet an objective standard of reasonableness.  See Sakakibara v. Spectrum Gaming, 2010 WL 2947381, at *3 (D. Nev. 2010)(compiling authority); Sun River Energy v. Nelson, 800 F.3d 1219, 1227 (10th Cir.

2015)(citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  A party's desire to "further investigate the applicability of the policy does not justify withholding it." Sakakibara, 2010 WL 2947381, at *3.  "[A] party has an affirmative obligation . . . to ensure that its search for discovery responses in the first instance is thorough and complete." Bullock v. Smith, 2008 WL 294544, at *2 (N.D. Miss. 2008).  "Counsel has an obligation to assure that the client complies with discovery obligations and court orders and, thus, *careful inquiry by counsel* is mandated in order to determine the existence of discoverable documents and to assure their production." Sun River Energy, 800 F.3d at 1229 (emphasis in original; internal quotations omitted).

Here, BOF knew of all policies under which it would claim insurance coverage.  See generally Exhibit 3.  BOF also knew the bases upon which it would claim coverage existed.  See id.  Exhibits to the Insurance Complaint substantiate that BOF has been claiming additional coverage under undisclosed insurance policies since September 2014—a year before its initial disclosures.  See Insurance Correspondence, dated September 18, 2014 through January 30, 2015, attached as **Exhibit 4** to Midwest's Motion for Sanctions.  So, BOF did more than just fail to ensure a thorough and complete production of insurance policies—BOF consciously chose not to produce insurance policies under which it would (indeed was) seeking coverage.  Such concealment is more than unjustified; it is an act of bad faith that has tainted this litigation.

      **B.    BOF'S VIOLATION WAS EXTREMELY HARMFUL**

Insurance information is "basic information needed in almost every civil case." Palacino, 2015 WL 8731779, at *2.  "[T]imely awareness of a party's insurance coverage can be crucial to opposing parties, but [opposing parties] ordinarily do not have access to the operative policies to

11

confirm for themselves whether there is potential coverage." <u>Sun River Energy</u>, 800 F.3d at 1229.  Failure to disclose potentially applicable insurance information leaves a claimant:

> unable to properly assess litigation strategy, to properly value Defendant's ability to pay any potential judgment, and to properly determine its mediation strategy because [the claimant lacks] all the information that should have been provided to them at the early stages of these proceedings.

<u>Palacino</u>, 2015 WL 8731779, at *3.  Without full disclosure under Rule 26(a)(1)(A)(iv), a party cannot "make a realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." <u>Anchondo</u>, 2011 WL 4549279, at *2.  Indeed, the mere act of "having to fight [a] discovery battle in the first place" creates prejudice. <u>PIC</u>, 2011 WL 2669144, at *9.  And "discovery failures cause[] the Court to expend an inordinate amount of time adjudicating a discovery matter." <u>Id.</u> at *10.

BOF's wrongful withholding of potentially applicable insurance policies has deprived Midwest of basic information needed to prosecute its action.  Midwest proceeded through discovery assuming BOF had abided by the Rules and produced all potentially applicable insurance policies.  Midwest relied on BOF complying with the Rules in framing its discovery and the issues addressed therein.  Midwest relied upon BOF's disclosures, in part, to create and implement its strategies related to mediation.  BOF's knowing violation of the Rules deprived Midwest of the ability to realistically appraise this case.  BOF's lack of full disclosure forced Midwest to base its litigation and settlement strategies on false statements.  And BOF's misconduct forced this Court to deal with discovery motions, including Midwest's Second Motion to Compel [ECF 154] and this Motion.  So, BOF's dishonesty has not only harmed Midwest, it has harmed this Court and the judicial process generally.

## II.     BOF'S DISCLOSURE VIOLATIONS CONSTITUTE BAD FAITH CONDUCT

Bad faith acts include "misleading the Court regarding the insurance status of [a defendant]." Anchondo, 2011 WL 4549279, at *6. "[A]ttempt[ing] to deceive both [the plaintiff] and the Court about the existence of [applicable] insurance polic[ies]" creates culpability allowing the imposition of sanctions under a district court's inherent authority. Id. "False . . . submissions are intolerable because they erode public confidence in judicial decisions and undermine the entire judicial process." Id.

BOF has gone further than simply failing to timely disclose potentially applicable insurance policies. BOF has actively misrepresented to Midwest and this Court the scope of potential insurance coverage for this action. BOF had the opportunity, based on Midwest's Second Motion to Compel, to revisit its disclosures and supplement them to include all potentially applicable insurance policies.[3] Rather than do so, BOF misrepresented to Midwest and this Court that no potentially available insurance coverage existed aside from the Portfolio policy. See Response to Second Motion to Compel [ECF 174] at 3; and Memo re Response to Second Motion to Compel [ECF 175] at 8-9.

As in Anchondo, sanctions against BOF under Rules 26(g)(3) and 37(c)(1) only address BOF's failure to produce discoverable policies. Such sanctions do not address BOF's affirmative

---

[3] BOF's failure to supplement its disclosures in response to Midwest's Second Motion to Compel despite knowing potential coverage existed beyond the Portfolio policy also violates Rule 26(e)(1)(A)(for which Rule 37 sanctions apply) and this Court's Local Rules. Fed. R. Civ. P. 37(c)(1)(applying sanctions to failures to supplement under Rule 26(e)); L.U.Civ.R. 26(a)(5)(requiring all supplementation be made "in no event later than the discovery deadline"); Reed v. Iowa Marine, 16 F.3d 82, 85 (5th Cir. 1994)(Rule 26(e)'s purpose is preventing prejudice and surprise); Walker v. George Koch Sons, 2008 WL 4371372, at *6 (S.D. Miss. 2008)(Rule 26(e) places an "an affirmative duty" on parties "to timely supplement"). And BOF continues violating Rule 26(e) after conceding that coverage exists in the Insurance Complaint.

misrepresentations. See Anchondo, 2011 WL 4549279, at *5 (holding sanctions under inherent authority appropriate to address false representations to the Court). BOF's deception extends beyond basic disclosure obligations; BOF has affirmatively submitted false information to this Court. Thus, BOF is subject to sanctions under this Court's inherent authority.

## III. APPROPRIATE SANCTIONS

"Courts impose discovery sanctions to (1) secure compliance with the discovery rules; (2) deter others from violating them; and, (3) punish those who do violate them." Bullock, 2008 WL 294544, at *2; Anchondo, 2011 WL 4549279, at *5 ("sanctions are intended to . . . : (1) compensat[e] innocent parties injured by a discovery violation; (2) punish[] a party who violates his obligations; (3) deter[] others from committing similar violations; and (4) streamlin[e] court dockets and facilitat[e] case management"); PIC, 2011 WL 2669144 at *7 ("remedying prejudice is not the sole purpose of sanctions. They also deter and punish misconduct"). Sanctions related to a party's failure to disclose potentially applicable insurance information specifically serve "to deter parties and their counsel from not taking their Rule 26 initial disclosure obligations seriously and ensure that parties and their counsel make a reasonable inquiry with respect to Rule 26(a) disclosures." Palacino, 2015 WL 8731779 at *3.

Federal district courts routinely award fees and costs to sanction a party's willful concealment and misrepresentation of potentially applicable insurance policies. See e.g., Palacino, 2015 WL 8731779, at *4; Rhodes, 2010 WL 4260048, at *7 (awarding $95,858.03 in fees and costs); Sakakibara, 2010 WL 2947381, at *3. And Mississippi federal district courts have awarded fees and costs for similar discovery violations. See e.g., Bullock, 2008 WL 294544, at *4; and PIC, 2011 WL 2669144, at *12-13 (awarding all causally related fees and

14

costs as sanctions to be paid by the violating party, not its insurer). Finally, in instances of egregious misconduct, courts have awarded the aggrieved party all fees and costs incurred in the action. See e.g., Anchondo, 2011 WL 4549279, at *8.

To "ensure congruence between a discovery violation and a discovery sanction, the Fifth Circuit has offered these factors to be considered: (1) willfulness, (2) delay and public interest, (3) attribution to the client, and (4) substantial prejudice." Bullock, 2008 WL 294544, at *3 (internal citations omitted). "[T]he materiality of the untimely-produced evidence . . . is a proxy of sorts for prejudice." Id. at *4.

Here, the Insurance Complaint and its exhibits establish BOF's willfulness. BOF knew it was claiming insurance coverage under undisclosed policies when it certified its initial disclosures. BOF knew it was claiming insurance coverage under undisclosed policies when it filed its Response to Midwest's Second Motion to Compel [ECF 174-75] with this Court. BOF knew it was mediating with potential insurance coverage it had not disclosed. Yet, BOF still has not disclosed at least seven policies that may provide coverage.

Refusing to abide by the Federal Rules of Civil Procedure is against the public interest. See Bullock, 2008 WL 294544, at *3 ("the public is always interested in preserving judicial resources and seeing civil cases resolved"). BOF's concealment has led to both Midwest's Second Motion to Compel and this Motion, unnecessarily wasting judicial resources on conflicts that never should have arisen. BOF's misrepresentations and concealment compromised all of

Midwest's discovery because Midwest tailored its discovery based upon a false understanding of available insurance coverage.[4]

Regarding substantial prejudice, insurance documents are material. BOF's concealment sabotaged the November mediation. BOF's failure to disclose at least seven policies—each providing millions of dollars in potential coverage—precluded any consideration of a Kaplan agreement. See Kaplan v. Harco Nat'l Ins., 716 So.2d 673 (Miss. Ct. App. 1998)(holding bad faith and punitive damages claims against insurers assignable). This is especially true because the suggestions were that only a $2 million eroding policy was available to BOF. Even more generally, Midwest could not effectively negotiate with BOF because the basic contours of available insurance coverage were unknown. And Midwest, not to mention this Court, expended significant time and resources trying to have BOF do nothing more than meet its obligations under Rule 26, which BOF has still failed to do. So, BOF's concealment and misrepresentation were willful; BOF's bad faith acts contravene the public interest; these bad faith acts of concealment and misrepresentation are attributable to BOF, its counsel, or both; and substantial prejudice exists, making significant sanctions appropriate.[5]

Under these circumstances, the following sanctions are causally connected to BOF's bad faith acts of concealment and misrepresentation:

---

[4] Since BOF's misconduct inherently undermined every facet of Midwest's discovery, it is unfortunately impossible and unfeasible to redo all discovery or to ascertain what additional discovery may remediate BOF's deceit.

[5] It is currently unclear whether BOF's bad faith acts are attributable to BOF itself or its counsel. Midwest cannot address this issue without further information—information likely forthcoming in BOF's response. But Midwest notes that these bad faith acts of concealment and misrepresentation are attributable to no one other than BOF, its counsel, or both. Thus, Midwest reserves its right to address attribution in its reply once it receives further information.

- Full and complete disclosure and discovery, including depositions, concerning all potentially available insurance coverage and all communications concerning such coverage, with associated fees and costs to be paid by BOF. BOF's willful misrepresentations and concealment have undermined the veracity of any previous representations concerning its insurance coverage.

- Midwest's attorney fees and costs associated with the failed November 2016 mediation because BOF sabotaged settlement through its concealment and misrepresentations.

- A new mediation, at a location of Midwest's choosing,[6] for which BOF pays all of Midwest's associated fees and costs because BOF sabotaged the first mediation.

- Midwest's attorney fees and costs associated with discovery and depositions propounded by Midwest. Midwest's discovery strategy was heavily influenced by BOF's false statements concerning available coverage. Had BOF complied with Rule 26(a)(1)(A)(iv), Midwest's discovery would have been significantly enhanced. BOF's misrepresentations compromised the entirety of Midwest's discovery efforts and BOF should be required to pay for the fees and costs incurred by this compromised discovery.

- Midwest's attorney fees and costs associated with its Second Motion to Compel. Midwest would not have had to address withholding of applicable insurance policies if BOF had complied with Rule 26(a)(1)(A)(iv).

- Midwest's attorney fees and costs associated with this Motion because BOF has created the need for this Motion.[7]

- A stipulated fact at trial that informs the jury of BOF's willful bad faith misconduct of concealing and misrepresenting the truth regarding discoverable information.

- Any further relief this Court deems appropriate under its inherent authority because of BOF's false submissions to Midwest and this Court regarding the existence of potentially applicable insurance policies.[8]

---

[6] At BOF's insistence, the botched mediation was held in Jackson, Mississippi, and Midwest and its attorneys traveled to the mediation. Since its misconduct necessitates a second mediation, BOF and its counsel should have to travel to that mediation.

[7] In requesting attorney fees and costs related to its Second Motion to Compel and this Motion, Midwest notes that "it simply would not be equitable to force Plaintiff to shoulder the burden for expenses that would not have been incurred but for Defendant's failure to fulfill its discovery obligations." PIC, 2011 WL 2669144, at *9.

[8] Midwest notes that sanctions under a court's inherent authority "provide a lesson in what this Court expects from litigants." PIC, 2011 WL 2669144, at *8.

## **CONCLUSION**

Midwest Feeders respectfully requests this Court enter the above-referenced sanctions against Defendant BOF based upon BOF's conduct described herein and the applicable law.

Respectfully submitted on January 18, 2017.

            SNELL & WILMER L.L.P.

            */s/ Scott C. Sandberg*
            John O'Brien *Admitted Pro Hac Vice*
            Timothy G. O'Neill *Admitted Pro Hac Vice*
            Scott C. Sandberg *Admitted Pro Hac Vice*
            Neal McConomy *Admitted Pro Hac Vice*
            1200 Seventeenth Street, Suite 1900
            Denver, Colorado 80202
            Telephone: (303) 634-2000 / Fax: (303) 634-2020
            Email: jobrien@swlaw.com; toneill@swlaw.com;
            ssandberg@swlaw.com

            and

            James F. Noble III (MS Bar #8507)
            Noble & Noble, PLLC
            751 Avignon Drive; Ste. B (39157)
            Post Office Drawer 3293
            Ridgeland, MS 39158-3293
            Telephone: 601.856.1400 / Telefax: 601.856.1419
            jnoble@noblelaw.net

            *Counsel for Plaintiff, Midwest Feeders, Inc.*

**CERTIFICATE OF SERVICE**

        I hereby certify that on January 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Judy L. Burnthorn | Lane Reed |
| Lawrence Matt Quinlivan | Mary Kathryn Williamson |
| Deutsch, Kerrigan & Stiles, L.L.P. | McGehee, McGehee & Torrey |
| 2510 14th Street, Suite 1001 | 26 South First Street |
| Gulfport, MS 39501 | Post Office Box 188 |
| Telephone: (228) 864-0161 | Meadville, Mississippi 39653 |
| Facsimile: (228) 863-5278 | Telephone: 601-384-2343 |
| jburnthorn@dkslaw.com | Facsimile: 601-384-5442 |
| mquinlivan@dkslaw.com | lane@mmtlaw.net; mmtlaw@mmtlaw.net |
| | MaryKathryn@mmtlaw.net |

John L Maxey II
Kelly Hollingsworth Stringer
S. Mark Wann
MAXEY WANN PLLC
210 E. Capitol Street, Suite 2100 (39201)
Post Office Box 3977
Jackson, Mississippi 39207-3977
Telephone: 601-355-8855
Telefax: 601-355-8881
John@maxeywann.com
Mark@maxeywann.com
kelly@maxeywann.com

*Counsel for Defendant Bank of Franklin*

                                                *s/ Pamela Thede*
                                                for Snell & Wilmer L.L.P.

25515241